UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application for Judicial Assistance of *Yves Bouvier* For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case No. 25 Misc. _____ |

**DECLARATION OF HONG KONG ATTORNEY TROY GREIG, IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS.**

I, the undersigned, Troy Greig, under oath and penalty of perjury, pursuant to 28 U.S.C. § 1746, and duly authorized, declare the following:

**I.     INTRODUCTION**

1. I am over the age of 18, and the facts set forth herein are based on my own personal knowledge or on information provided to me by others. Where facts are within my personal knowledge, I can affirm that they are true. Where the information is provided to me by others, I state the source of my knowledge and affirm it is true to the best of my information and belief.

2. I am a Hong Kong solicitor and partner in the Restructuring and Insolvency department at Tanner De Witt (Hong Kong). My law firm represents Yves Bouvier ("Applicant") in relation to the pending civil proceeding in Hong Kong ("the Foreign Proceedings"). I was admitted as a solicitor in Hong Kong in 2017, and my practice includes restructuring and Insolvency, Fraud and Asset Tracing, and Litigation.

3. I submit this Declaration in support of Applicant's application for an Order pursuant to 28 U.S.C. § 1782 authorizing discovery in connection with proceedings in Hong Kong commenced against Defendants Pascal de Sarthe, De Sarthe Contemporary Limited and Milocci Limited ("Hong Kong Defendants") for the recovery of 91 Artworks and/or Reinvested Artworks and/or pay proceeds received from any sale. I

#5067616v1 - 2500059

1

attach a true and correct copy of the Writ of Summons and Indorsement of Claim as <u>Exhibit 1</u>.

4. Applicant seeks to obtain evidence relating to the Artworks entrusted to Pascal de Sarthe between 2015 and 2017 to advance his claims against Pascal de Sarthe for breach of contract and conversion, and against two of his companies, De Sarthe Contemporary Limited and Milocci Limited for producing/inducing breach of the Agreement by Pascal de Sarthe, dishonest assistance and/or knowing receipt, conversion.

## II.   THE FACTUAL BACKGROUND

5. Applicant, Yves Bouvier, is an individual and a Swiss citizen whose current address is 15 Lor M TK Kurau #05-06 Mabelle Singapore 425303. Since 1995, Yves Bouvier has been engaged in the business of storing art. In addition, since 2000, Yves Bouvier has also acted as a private art dealer and a private investor in several art galleries and has been especially active in Asia since 2008. By the Foreign Proceedings, Yves Bouvier asserts ownership over the 91 Artworks, the total value of which was USD 100 million at the time they were purchased. Attached is a true copy of the list of the Artworks, annexed hereto as <u>Exhibit 2</u>.

6. Foreign Defendant, Pascal de Sarthe, is an individual and a French citizen whose last known address is Block A, Vita Tower, 29 Wong Chuk Hang Road, Hong Kong. Pascal de Sarthe is an art dealer and a gallerist.

7. In 2010, Yves Bouvier was introduced to Pascal de Sarthe through his long-time friend, Jean Marc Peretti.

8. In 2015, Yves Bouvier faced criminal complaints and civil lawsuits, which posed a serious threat to his business reputation and resulted in him being blacklisted by auction houses. Yves Bouvier was arrested in Monaco based on a complaint by a former client of his, Dmitriy Rybolovlev. Despite being released from custody, Yves

Bouvier later faced investigations and civil proceedings that lasted more than 8 years ("Rybolovlev Proceedings"). The various proceedings were widely publicized and led to Yves Bouvier and companies being blacklisted by premier auction houses such as Sotheby's and Christie's. His business was at a complete standstill. The preservation of his art stock became essential.

9. Yves Bouvier reached out to Jean Marc Peretti to discuss how he could preserve the value of his art collection and ensure their continued exhibition in renowned institutions while the Rybolovlev Proceedings remained in place. Jean Marc Peretti suggested that Yves Bouvier placed his Artworks with Pascal de Sarthe, who had by then already considered three Chy The-Chun artworks for Pascal de Sarthe to market the artworks to this network of Asian collectors, and agreed to this suggestion.

10. Upon discussion, Yves Bouvier, Pascal de Sarthe, and Jean Marc Peretti reached an oral agreement ("the Agreement"). The Agreement was not documented or formalized in writing. This practice is common in the art industry.

- The Agreement's objectives were the custody and care of Yves Bouvier's artworks in Hong Kong, and the maintenance and enhancement of the value and standing of the artworks.

- Pascal de Sarthe would showcase the Artworks, conduct their marketing, and secure the best sale price on Yves Bouvier's behalf.

- Upon the sale of any Artwork, Pascal de Sarthe was required to reinvest, with the assistance of Peretti, the proceeds of the sale to purchase new pieces of artwork for resale once a favorable opportunity presented itself. Specifically, Jean Marc Peretti was to identify conservative investment opportunities, mainly in 20th-century artworks by established artists, with the aim of increasing the value of Yves Bouvier's collection and making a profit on the Artworks (and Reinvested Artworks).

- Pascal de Sarthe was responsible for managing the Artworks, the Reinvested Artworks, and their value, maintaining financial records of all transactions, expenses, and profit distributions. In particular, profits (if any) should be calculated by reference to the difference between (i) the amount stated in the Proforma Invoice of the artwork entrusted to Pascal de Sarthe or the purchase price of the Reinvested Artworks (as the case may be) and (ii) the sale price, and deducting from it related expenses such as logistic, insurance, administration and legal cost (the "Net Profits").

- Jean Marc Peretti and Pascal de Sarthe were to decide on the sales and purchases to be made jointly. Unless otherwise instructed by Yves Bouvier, Jean Marc Peretti and Pascal de Sarthe shall be entitled to exercise their discretion to make decisions in accordance with the parameters set out above without Yves Bouvier's further participation or approval.

- Pascal de Sarthe was to act as trustee and agent of Yves Bouvier, to perform the obligations of managing and selling the Artworks and Reinvested Artworks. In contrast, Jean Marc Peretti was to take a supervisory/advisory role in the process. All transactions would need to be jointly decided and approved by Pascal de Sarthe and Jean Marc Peretti.

- In consideration of the services, Pascal de Sarthe and Jean Marc Peretti were to be collectively remunerated with a 50% share of the Net Profits, whereas Yves Bouvier shall be entitled to the remaining 50% thereof. Subject to the distribution of the aforesaid Net Profit, the principal value of the Artworks and Reinvested Artworks shall belong to Yves Bouvier.

- The Agreement shall be terminated at Yves Bouvier's election or upon mutual agreement. Upon termination, Pascal de Sarthe shall give a full account of and deliver up the Artworks and the Reinvested Artworks to Yves Bouvier, and the

parties shall settle all outstanding Net Profit.

11. Between 2015 and 2017, pursuant to the Agreement, Yves Bouvier arranged for the Artworks to be delivered to Pascal de Sarthe, who took delivery of the same by himself and/or his companies De Sarthe Contemporary Limited and Milocci Limited in Hong Kong. Pascal de Sarthe and Jean Marc Peretti were supposed to manage the Artworks and/or Reinvested Artworks in accordance with the terms of the Agreement, while Yves Bouvier would deal with various lawsuits.

12. By the end of 2023, all Rybolovlev Proceedings were resolved, and the outcome successfully restored Yves Bouvier's reputation.  Yves Bouvier consequently reached out to Jean Marc Peretti, requesting him to provide a comprehensive report on the management of the Artworks that had been entrusted to Pascal de Sarthe. However, Jean Marc Peretti was evasive and often ignored his calls.  Yves Bouvier became concerned about the whereabouts of the Artworks, particularly upon learning that Jean Marc Peretti was, on May 28, 2025, convicted of and sentenced to five years' imprisonment over charges of money laundering, extortion, and racketeering in France.  Jean Marc Peretti became uncontactable thereafter.  Concerned about the safe custody of the Artworks, Yves Bouvier decided to contact Pascal de Sarthe and instructed my firm to ask him for an account directly.

### III. THE PENDING PROCEEDINGS IN HONG KONG

13. On August 5, 2025, Yves Bouvier instructed my firm to write to the Hong Kong Defendants, demanding a complete account of their activities relating to the management of the Artworks and any Reinvested Artworks from 2015 to the present.

14. On August 13, 2025, solicitors for the Hong Kong Defendants, Howse Williams, by letter, confirmed that they act for the Hong Kong Defendants, and gave a holding reply, noting that the case handler was traveling overseas. Three weeks later, on September 3, 2025, Howse Williams responded, claiming that Pascal de Sarthe was

neither instructed by Yves Bouvier with the management or sale of the Artworks, nor instructed by Yves Bouvier in respect of the purchase of the Reinvested Artworks.

15. On September 17, 2025, Howse Williams gave a fuller account of the Hong Kong Defendants' stance and claimed, for the first time, that they were acting as an agent for Jean Marc Peretti in respect of the Artworks and the Reinvested Artworks. The Hong Kong Defendants persisted in refusing to provide any details of the Artworks and Reinvested Artworks to Yves Bouvier (i) not denying that they have received and/or are in possession of the same and (ii) professing to adopt a "neutral stance" until "whatever dispute exists between Yves Bouvier and Jean Marc Peretti is resolved. By letter dated September 23, 2025, my firm provided Howse Williams with evidence of Pascal de Sarthe's knowledge of Yves Bouvier's ownership of the Artworks and gave the Hong Kong Defendants an ultimatum to provide the requested information and deliver up the Artworks and the Reinvested Arts by September 25, 2025. My firm has never received any response to its request.

16. On September 29, 2025, a Writ of Summons and Indorsement of Claim was issued against Pascal de Sarthe for breach of contract and conversion, and against two of his companies, De Sarthe Contemporary Limited and Milocci Limited for producing/inducing breach of the Agreement by Pascal de Sarthe, dishonest assistance and/or knowing receipt, conversion. Further, to preserve the *status quo* pending that action, an Inter-partes Summons was issued against the Hong Kong Defendants for proprietary injunction order, preservation order, and disclosure order.

17. On October 3, 2025, a hearing was held before DHCJ Kent Yee for the Inter-partes Summons on the request for a proprietary and preservation injunction, a disclosure order, and an inspection order.

18. The Hong Kong Defendants, voluntarily conceded to the application and provided undertakings to the Court to (i) preserve the Artworks and Reinvested Artworks

pending trial or further order of the Court (save and except in relation to 2 pieces of artworks that the Hong Kong Defendants alleged a personal claim ("**Disputed Artworks**"), until 12 December 2025); and (ii) to provide a complete account of his activities relating to the management of the Artworks and any Reinvested Artworks from 2015 to the present, save and except for the Disputed Artworks.

19. On November 28, 2025, Pascal de Sarthe filed an interpleader against Mr. Peretti, seeking to join Mr. Peretti as a claimant in this action and requesting that the ownership dispute be determined as a preliminary issue. A true copy of the Summons is annexed as <u>Exhibit 3</u>. Simultaneously, Pascal de Sarthe requested that discovery be stayed pending the Court's determination of ownership on December 12, 2025.

### IV.   NATURE OF DISCOVERY SOUGHT

20. Applicant seeks assistance from the United States District Court for the Southern District of New York to obtain relevant and probative documentary evidence from:

    (i)    Citibank, N.A.;

    (ii)   The Bank of New York Mellon;

    (iii)  Société Générale, New York Branch;

    (iv)   HSBC Bank USA, N.A.;

    (v)    BNP Paribas USA;

    (vi)   JPMorgan Chase Bank, N.A.;

    (vii)  Barclays Bank PLC;

    (viii) Deutsche Bank Trust Co. Americas;

    (ix)   UBS AG;

    (x)    Bank of America, N.A.;

    (xi)   Standard Chartered Bank US;

    (xii)  Commerzbank AG, New York Branch;

  (xiii) Bank of China, New York Branch;

  (xiv) Wells Fargo Bank, N.A.; and

  (xv) The Clearing House Payments Company L.L.C. ("TCH") (together, the "Financial Institutions"); and

  (xvi) Sotheby's Inc., New York ("Sotheby's")

  (xvii) Christie's Inc., New York ("Christie's") (together with the Financial Institutions, the "Respondents").

  a. *Discovery sought to New York Financial Institutions*.

21. Applicant seeks assistance to obtain probative documentary evidence from the Financial Institutions to locate the Artworks and determine whether the Artworks were sold, and if so, the amount of the proceeds that Yves Bouvier is entitled to.

22. I am advised by New York counsel that the Financial Institutions are commonly known to act as correspondent, intermediary, or otherwise clearinghouse banks for U.S. Dollar-denominated wire transfers passing from domestic banks to international banks, and vice versa.

23. I am further advised by New York counsel that the New York Banks and TCH, from whom discovery is sought, reside or are found in the Southern District of New York, within the meaning of 28 U.S.C. §1782.

24. Applicant seeks evidence maintained by the New York Banks and TCH in New York City regarding USD-denominated wire transactions and documents relating thereto. Specifically, the discovery sought from the New York Banks and TCH is evidence of wire transfers routed through the New York Institutions in New York City, revealing the complete picture of the movement of funds from and between Pascal de Sarthe, Jean Marc Peretti, Antoine Peretti, and the entities they control (collectively, the "Discovery Targets"). This is crucial for uncovering whether Discovery Targets sold the Artworks, to whom, and for how much. The transfers

will further the claims for conversion and breach of contract, as it may prove that Pascal de Sarthe failed to transfer 50% of the proceeds as required by the Agreement. Therefore, the discovery should assist Applicant in pleading and proving his claims against Foreign Defendant in the Foreign Proceeding.

25. The discovery sought to be served on the Respondents is not intrusive or unduly burdensome because it is of limited scope. Applicant seeks limited records relating to wire transactions involving Foreign Defendant, Pascal de Sarthe, and Jean Marc Peretti and his son, Antoine Peretti, as well as his companies, for which the New York Banks and TCH were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, RTP, Fedwire, FedNow, FedACH, or where the New York Banks and TCH otherwise facilitated interbank funds transfers, as well as documents relating thereto, for the limited period beginning February 1, 2015, through the present. I am advised by New York counsel that the documentary evidence sought is of the type that the Respondents regularly and easily retrieve and produce as third parties or actual parties in litigation.

    b. *Discovery sought from Sotheby's and Christie's*

26. Applicant seeks assistance to obtain probative documentary evidence from Sotheby's and Christie's to locate the Artworks and to determine whether a sale of an Artwork occurred.

27. I am further advised by New York counsel that Sotheby's and Christie's, from whom discovery is sought, reside or are found in the Southern District of New York, within the meaning of 28 U.S.C. §1782.

28. Applicant seeks evidence maintained by Sotheby's and Christie's regarding 91 Artworks and information about the bank accounts and other assets of Pascal de Sarthe and Jean Marc Peretti used in violation of Mr Bouvier's rights. The discovery will permit Yves Bouvier to determine whether the Artworks were sold, and whether

Pascal de Sarthe failed to transfer the proceeds to Mr Bouvier in accordance with the Agreement. That will support Yves Bouvier's claim for breach of contract. Similarly, the discovery will permit the determination of the location and ownership of the Artworks and ultimately determine whether Pascal de Sarthe committed conversion by failing to remit the Artworks, which Yves Bouvier is the owner, and transfer funds that should have been transferred to Yves Bouvier.

29. The discovery sought to be served on Sotheby's and Christie's is not intrusive or unduly burdensome because it is of limited scope. Applicant seeks limited records relating to the Artworks which Pascal de Sarthe was supposed to care for and manage. The discovery is also limited in scope as it requires records involving the following Discovery Targets:

- Pascal de Sarthe, Foreign Defendant to the Foreign Proceedings;

- Sylvie de Sarthe, wife of Pascal de Sarthe and shareholder of De Sarthe Contemporary and Milocci Limited, entities controlled by Pascal de Sarthe;

- Jean-Marc Peretti, business partner of Yves Bouvier and Pascal de Sarthe and co-contractor to the Agreement involving the 91 Artworks and a potential claimant to the Foreign Proceedings;

- Antoine Peretti, son of Jean-Marc Peretti and director and shareholder of Atlantide Ltd.;

- Ryan Peretti, son of Jean-Marc Peretti and director and shareholder of Ryan S.A.;

- George de Bartha, who, as alleged by Pascal de Sarthe, is a business partner of Jean-Marc Peretti and assists Jean-Marc Peretti to manage Hyoja S.A., Carnac Investments, and Albermarle Fine Art Ltd (or Albemarle Fine Art Ltd). He is also a shareholder and director of GDB Fine Arts Limited;

- Milocci Limited, Foreign Defendant, and a Hong Kong entity controlled by

Pascal de Sarthe;

- De Sarthe Contemporary Limited, Foreign Defendant, and a Hong Kong entity controlled by Pascal de Sarthe;

- De Sarthe Gallery, a Hong Kong entity in which Pascal de Sarthe is the ultimate beneficial owner (UBO);

- De Sarthe Fine Art, a Hong Kong entity in which Pascal de Sarthe is the ultimate beneficial owner (UBO);

- Pascal de Sarthe Fine Art, a U.S. entity in which Pascal de Sarthe is the ultimate beneficial owner (UBO);

- Accel Business Limited, a Hong Kong entity in which Pascal de Sarthe is the ultimate beneficial owner (UBO);

- Nelombos S.A., a Swiss entity in which Jean-Marc Peretti is the shareholder, director, and ultimate beneficial owner (UBO);

- The Yellow Trust, a Bahamas entity in which Jean-Marc Peretti is the ultimate beneficial owner;

- Connaught Asia Development Limited, a Hong Kong entity in which Jean-Marc Peretti is the sole shareholder and director;

- Atlantide Ltd, a U.K. entity in which Antoine Peretti is the shareholder and director and this company is used by Jean-Marc Peretti for his art and money transactions;

- Ryan S.A. is a Swiss company in which Ryan Peretti is a director and shareholder, and Jean-Marc Peretti is a director. This company is used by Jean-Marc Peretti for his art and money transactions;

- Hyoja S.A. is a Panama company which, as alleged by Pascal de Sarthe, was managed by George de Bartha and owned by Jean-Marc Peretti-;

- Carnac Investments Ltd is a Bahamas company which, as alleged by Pascal

de Sarthe, was managed by George de Bartha and owned by Jean-Marc Peretti;

- Albermarle Fine Art Ltd (or Albemarle Fine Art Ltd) is a U.K. company which, as alleged by Pascal de Sarthe, was managed by George de Bartha and owned by Jean-Marc Peretti;

- GDB Fine Arts Limited is a U.K. company in which George de Bartha was a shareholder and director and this company was used by Jean-Marc Peretti for his art and money transactions;

30. The Respondents are not expected to become a party to the Foreign Proceeding, and as such, this Application constitutes the only practical and timely method for obtaining the needed evidence for use there. Indeed, absent the instant Application, the discovery sought would almost certainly remain outside the reach of the Hong Kong Courts.

31. Further, there is no indication that Hong Kong courts would not be receptive to the documentary evidence sought through the instant Application. Such evidence is likely admissible in the Foreign Proceeding. The Application does not circumvent any proof-gathering restriction under Hong Kong law that I am aware of.

## V. APPLICANT SHOULD NOT BE REQUIRED TO GIVE NOTICE TO THE FOREIGN DEFENDANT, THE DISCOVERY TARGETS, AND THE RESPONDENTS

32. Applicant respectfully requests that it not be required to serve the Application upon (i) the Foreign Defendant, (ii) the Discovery Targets, or (iii) the Respondents. Applicant further requests that, should the Court grant this Application, Applicant not be required to serve (i) the Foreign Defendant, (ii) the Discovery Targets, or (iii) the Respondents with the order granting the Application and the subpoenas issued to the Respondents.

33. The discovery sought from the Financial Institutions, Sotheby's and Christie's will

be used in the Foreign Proceeding to prove the claims against Pascal de Sarthe, the defendant in that proceeding.

34. Therefore, notice of the Application, the order granting the Application (should the Court grant the Application), and subpoenas to the Respondents, would advance Foreign Defendant's scheme by providing them the opportunity to potentially further divert their assets and those of the entities Pascal de Sarthe beneficially owns, and would frustrate and delay Applicant's full understanding of Foreign Defendant's movement of assets. Applicant would be significantly delayed in obtaining critical information to plead and prove its claims if the Court requires notice of the Application, the order granting the Application, and the subpoenas to the Respondents, which would ultimately prejudice Applicant.

35. Conversely, there would be no prejudice to the party against whom the discovery is likely to be used in the Foreign Proceeding, as such party would be permitted to adjudicate the admissibility and relevance of any discovery received by Applicant in the Foreign Proceeding at the appropriate time. In the event Applicant obtains relevant evidence from the Respondents, due process will be respected, and the Foreign Defendant will be able to object to the submission of such discovery into evidence in the Foreign Proceeding.

36. In light of the foregoing, the lack of notice of the Application would not prejudice the Discovery Targets or the Respondents. Likewise, the lack of notice of the order granting the Application (should the court grant the Application) and subpoenas to the Respondents would not prejudice the Discovery Targets. Therefore, the Court should exercise its discretion and not require Applicant to give such notice.

## V. CONCLUSION

Considering the foregoing, Applicant respectfully requests that the Court grant the Application in its entirety.

Executed this __3rd__ day of __December__, 2025, in

Leonardo Royal London St. Paul's
10 Godliman Street, London EC4V 5AJ

———————————————————

By: _____
Troy Greig