UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Application for Judicial Assistance of *Yves Bouvier* For an Order Pursuant to 28 U.S.C. § 1782 To Conduct Discovery for Use in Foreign Proceedings | NO. 25-MC-0549 (VSB) (RFT)<br>**REPORT & RECOMMENDATION** |

**TO THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE:**

Pending before the Court are (1) Petitioner Yves Bouvier's application pursuant to 28 U.S.C. § 1782 for an order authorizing it to serve subpoenas on 17 respondent entities ("Respondent Entities") (ECF 1, the "Application"), to obtain discovery for use in civil proceedings pending in Hong Kong (the "Foreign Proceedings");[1] (2) an unopposed motion to intervene under Rule 24(a) by Pascal de Sarthe, De Sarthe Contemporary Limited, and Milocci Limited (together, the "de Sarthe Parties") (ECF 19, "de Sarthe Mot."); and (3) an unopposed motion to intervene under Rule 24(a) by Jean Marc Peretti (ECF 36, Peretti Mot.). Having reviewed the submissions by Petitioner, de Sarthe Parties, and Peretti, for the reasons set forth below, I respectfully recommend that the de Sarthe Parties Motion and the Peretti Motion be

[1] The Respondent Entities are (i) Citibank, N.A.; (ii) The Bank of New York Mellon; (iii) Société Générale, New York Branch; (iv) HSBC Bank USA, N.A.; (v) BNP Paribas USA; (vi) JPMorgan Chase Bank, N.A.; (vii) Wells Fargo Bank, N.A.; (viii) Deutsche Bank Trust Co. Americas; (ix) UBS AG; (x) Bank of America, N.A.; (xi) Bank of China, New York Branch; (xii) Standard Chartered Bank US; (xiii) Commerzbank AG, New York Branch; (xiv) Barclays Bank, PLC; (xv) The Clearing House Payment Company L.L.C.; (xvi) Sotheby's Inc., New York ("Sotheby's"), and (xvii) Christie's Inc., New York ("Christie's"). Together, the first 15 Respondent Entities are the "Financial Institution Respondent Entities."

GRANTED and that the Application be GRANTED IN PART, with the subpoenas limited to certain records from Sotheby's and Christie's, as described below.[2]

**I.**

**FACTUAL BACKGROUND**

**A. The Underlying Dispute**

According to the Application, Petitioner has, for over two decades, "acted as a private art dealer and a private investor in several art galleries and has been especially active in Asia since 2008." (ECF 2, Declaration of Troy Greig ("Greig Decl.") ¶ 5.)[3] In 2015, Petitioner, who at the time was facing criminal investigations and civil litigation, was "blacklisted by premier auction houses such as Sotheby's and Christie's"; as a result, Petitioner had difficulty finding purchasers for his art. (*Id.* ¶ 8.) Peretti suggested that Petitioner place 91 artworks, worth $100

---

[2] I have authority to decide non-dispositive matters only. *See* Fed. R. Civ. P. 72(a). The Second Circuit has held that motions to intervene as of right under Rule 24(a) are dispositive. *See Stackhouse v. McKnight,* 168 F. App'x 464, 466-67 (2d Cir.2006); *New York Chinese TV Programs, Inc. v. U.E. Enterprises. Inc.,* 996 F.2d 21, 25 (2d Cir.1993). "Until recently, the consensus view in this District was that rulings on § 1782 applications are not dispositive, and therefore that such an application could be disposed by order of the Magistrate Judge to whom it was referred . . . ." *In re Libyan Asset Recovery and Mgmt. Office*, No. 21-MC-0852 (JGK) (BCM), 2023 WL 8445811, at *1 n.1 (S.D.N.Y. Nov. 16, 2023) (quoting *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019)). However, in *Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp*., No. 22-2865, 2023 WL 3166357 (2d Cir. Mar. 28, 2023), a panel of the Second Circuit decided that it lacked jurisdiction to review the order issued by a Magistrate Judge denying an application under Section 1782 and remanded so that the order could be "treated as a report and recommendation." 2023 WL 3166357, at *1. While the Second Circuit did not explain its reasoning, the theory would be that the entire purpose of a Section 1782 petition is to seek discovery, so that any decision regarding whether discovery may proceed is dispositive. I therefore make a report and recommendation on the motions to intervene and the Application rather than issuing an opinion and order.

[3] Unless otherwise indicated, this report and recommendation omits internal quotation marks, alterations, and citations from quoted text.

million in total at the time of purchase (the "Artworks"), with de Sarthe for marketing. (*See id.* ¶¶ 5, 9.)[4] Petitioner, Peretti, and de Sarthe entered into an oral agreement (the "Agreement"), under which de Sarthe would market the Artworks; upon selling any Artwork, de Sarthe, with Peretti's assistance, was to identify and purchase new art for resale ("Reinvested Artworks"). (*See id.* ¶ 10.) For their services, de Sarthe and Peretti were to receive half the net profits from any sales and Petitioner was to receive the remaining half. (*See id*.)

Also according to the Petition, by the end of 2023, Petitioner's reputation had been restored, and Petitioner contacted Peretti for a report on the status of the Artworks and any Reinvested Artworks. (*See id.* ¶ 12.) Peretti "was evasive and often ignored [Petitioner's] calls." (*Id.*) Petitioner instructed a Hong Kong law firm to contact de Sarthe about the status of the Artworks and any Reinvested Artworks, but de Sarthe did not provide the requested information. (*See id.*) Petitioner's Hong Kong counsel gave de Sarthe "an ultimatum" to respond and return the Artworks and any Reinvested Artworks by September 25, 2025; the ultimatum was ignored. (*Id.* ¶ 15.)

**B. The Foreign Proceedings**

On September 29, 2025, Petitioner initiated the Foreign Proceedings against the de Sarthe Parties, alleging, among other claims, breach of the Agreement and conversion by de Sarthe, and inducing breach of the Agreement, dishonest assistance, and conversion against de

4 While the Writ of Summons and Indorsement of Claim issued by Petitioner in the Foreign Proceedings state that he had 92 artworks that were subject to the Agreement (*see* ECF 2-1, Writ of Summons at 4), he now claims ownership of 91 artworks that are at issue in the Foreign Proceedings. (*See* ECF 2, Greig Decl. ¶ 5.)

Sarthe Contemporary Limited and Milocci Limited (the de Sarthe Parties are also the "Original Hong Kong Defendants"). (*See id.* ¶ 16.)

To preserve the status quo while the Foreign Proceedings were ongoing, Petitioner sought a "proprietary injunction order, preservation order, and disclosure order." (*Id.*) At a hearing on October 3, 2025, the Original Hong Kong Defendants

> provided undertakings to the Court to (i) preserve the Artworks and Reinvested Artworks pending trial or further order of the Court (save and except in relation to 2 pieces of artworks that the Hong Kong Defendants alleged a personal claim ("Disputed Artworks"), until 12 December 2025); and (ii) to provide a complete account of [de Sarthe's] activities relating to the management of the Artworks and any Reinvested Artworks from 2015 to the present, save and except for the Disputed Artworks.

(*Id.* ¶¶ 17-18.) Petitioner contends that notwithstanding the undertaking to provide discovery on the Artworks and any Reinvested Artworks, the Original Hong Kong Defendants provided incomplete and heavily redacted information. (*See* ECF 25, Reply Declaration of Troy Greig ("Reply Greig Decl.") ¶ 6.)

Peretti takes the position in the Foreign Proceedings that he bought and owns all but two of the Artworks and that the Agreement is a fiction; he asserts that the two Artworks he does not own are owned by one of the de Sarthe Parties. (*See* ECF 38, Declaration of Jean Marc Peretti ("Peretti Decl.") ¶¶ 12, 19, 22.) Peretti contends that Petitioner assisted him in purchasing some of the Artworks but was never a co-owner, and that Peretti entered into written consignment agreements with two of the de Sarthe Parties for marketing and sale of the Artworks he owned. (*See id.* ¶¶ 19, 21.)

On November 28, 2025, de Sarthe filed an interpleader against Peretti, seeking to join Peretti in the Foreign Proceedings; de Sarthe also requested that the Hong Kong court

determine the ownership of the Artworks before addressing any other issues and sought a stay of discovery pending the decision on ownership. (*See* ECF 21, Declaration of Hiu Yee Chung ("Chung Decl.") ¶¶ 14, 28.) Peretti consented to the joinder. (ECF 38, Peretti Decl. ¶ 5.) The Hong Kong court appears to have joined Peretti over Petitioner's objection. (*See* ECF 46, Peretti Sur-Reply at 5 n.2.) Thus, the Original Hong Kong Defendants and Peretti are the "Hong Kong Defendants."

## II.

## PROCEDURAL HISTORY

On December 3, 2025, Petitioner filed the Application on an ex parte basis. (*See generally* ECF 1, App.; ECF 2, Greig Decl.); ECF 3, Declaration of Thomas Vandenabeele ("Vandenabeele Decl."); ECF 4, Pet.'s Mem.) On December 22, 2025, the de Sarthe Parties filed the de Sarthe Parties Motion and opposed the Application. (*See generally* ECF 19, de Sarthe Mot.; ECF 20, de Sarthe Mem.; ECF 21, Chung Decl.; ECF 22, Declaration of Pascal de Sarthe ("de Sarthe Decl.").) On January 5, 2026, Petitioner filed a reply in further support of the Application. (*See generally* ECF 24, Pet.'s de Sarthe Reply; ECF 25, Reply Greig Decl.)

The Application seeks records relating to the Artworks and any Reinvested Artworks, including documents relating to the proceeds of any sales, which, according to Petitioner, will help the Hong Kong court to adjudicate his claims in the Foreign Proceedings and will help him to locate the Artworks and any Reinvested Artworks. (*See* ECF 2, Greig Decl. ¶¶ 4, 21, 26.) Specifically, the Application's proposed subpoenas seek records from the Financial Institution

Respondent Entities, solely in their capacity as an intermediary or correspondent bank,[5] of U.S.-dollar wire transfers by 21 individuals and entities: the de Sarthe Parties, de Sarthe's wife Sylvie de Sarthe, and companies controlled by de Sarthe, as well as related to Peretti, Peretti's sons Antoine and Ryan Peretti, George de Bartha, and to the entities controlled by each of the individuals and in which each of the individuals is a shareholder and/or ultimate beneficial owner (together, the "Discovery Targets"); the financial records sought are limited to transactions from February 1, 2015 to present in which the Financial Institution Respondent Entities acted solely as intermediary banks or correspondent banks. (*See* ECF 1-1, Sample Financial Institution Respondent Entity Subpoena at 4; ECF 2, Greig Decl. ¶ 25; ECF 3, Vandenabeele Decl. ¶¶ 7, 47.)[6]

From Sotheby's and Christie's, the Application's proposed subpoenas seek records generally relating to the Artworks and records of purchases and sales of art from February 1, 2015 to present by the Discovery Targets. (*See* ECF 1-2, Sample Sotheby's Subpoena at 4; ECF 1-3, Sample Christy's Subpoena at 4; ECF 2, Greig Decl. ¶ 28; ECF 3, Vandenabeele Decl. ¶ 7.)

On January 30, 2026, Peretti filed the Peretti Motion and opposed the Application. (*See generally* ECF 36, Peretti Mot.; ECF 37, Peretti Mem.; ECF 38, Peretti Decl.; ECF 39, Affirmation

---

5 Correspondent and intermediary banks are banks used "for U.S. Dollar-denominated wire transfers passing from domestic banks to international banks, and vice versa." (ECF 2, Greig Decl. ¶ 21.)

6 Although the declarations filed with Petitioner's Application state that Petitioner seeks records relating to wire transactions involving the Financial Institution Respondent Entities as originating, beneficiary, or intermediary or correspondent banks (*see* ECF 2, Greig Decl. ¶ 25; ECF 3, Vandenabeele Decl. ¶ 7), Petitioner's proposed subpoena for those entities state that it seeks records involving the Financial Institution Respondent Entities as intermediary or correspondent banks. (*See* ECF 1-1, Sample Financial Institution Respondent Entity Subpoena).

of Adrian Elms ("Elms Aff.").) On February 13, 2026, Petitioner filed a reply in further support of the Application. (*See generally* ECF 41, Pet.'s Peretti Reply; ECF 42, Declaration of Yves Bouvier ("Bouvier Decl."); ECF 43 Second Reply Declaration of Troy Greig ("Second Reply Greig Decl.").) On March 2, 2026, Peretti, with permission of the Court, filed a sur-reply memorandum. (*See generally* ECF 46, Peretti Sur-Reply.) Petitioner does not oppose the motions to intervene. (*See* ECF 14, Stip. and Order re: de Sarthe Mot. To Intervene; ECF 16, Proposed Stip. and Order re: de Sarthe Parties' Mot. To Intervene; ECF 31, Proposed Stip. and Ord. re: Peretti's Mot. To Intervene.) This matter was referred to me to prepare a report and recommendation on the Application and the Motions To Intervene. (*See* ECF 40, Order of Ref.)

## III.

## ANALYSIS

### A. The Motions To Intervene

Rule 24(a) states, in relevant part:

> On timely motion, the court must permit anyone to intervene who: . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Under Rule 24(a), "where a proposed intervenor's interests are otherwise unrepresented in an action, the interest requirement for intervention is no more burdensome than the standing requirement." *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 474 (2d Cir. 2010). An individual or entity has standing under Section 1782 when the proposed intervenor is a party to the relevant foreign proceedings. *See Kuwait Inv. Auth. v. Sarrio S.A.,* 119 F.3d 143, 148 (2d Cir. 1997) (holding that the "party against whom the

requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of . . . § 1782").

The unopposed motions to intervene satisfy the requirements of Rule 24(a).

To begin with, the motions to intervene are timely, with the de Sarthe Parties Motion having been filed before the de Sarthe Parties' December 22, 2025 deadline and the Peretti Motion having been filed before Peretti's January 30, 2026 deadline. (ECF 14, Stip. and Order re: de Sarthe Mot. To Intervene and Opp.; ECF 17, Stip. and Order re: de Sarthe Parties Mot. To Intervene and Opp.; ECF 19, de Sarthe Mot.; ECF 33, Stip. and Ord. re: Peretti Mot. To Intervene; ECF 36, Peretti Mot.)

The Application was made ex parte, and so there are no respondents opposing the Application; even if the Respondent Entities had been served and appeared, the Respondent Entities are outside the control of the de Sarthe Parties and Peretti and therefore would not represent the interests of the de Sarthe Parties and Peretti in ensuring that the Application meets the requirements of Section 1782.

Petitioner seeks to use the subpoenaed information against the de Sarthe Parties and Peretti – the Hong Kong Defendants – in the Foreign Proceedings. (*See* ECF 2, Greig Decl. ¶ 24.) Thus, the de Sarthe Parties and Peretti have standing to intervene. *See In re Orthogen Int'l GmbH*, No. 24-MC-0504 (VSB), 2025 WL 1268843, at *6 (S.D.N.Y. Apr. 30, 2025) (granting a motion to intervene where the requested discovery would be used against the intervening party in the foreign proceeding); *In re Bourlakova*, No. 24-MC-0071 (JPO), 2024 WL 4839047, at *2 (S.D.N.Y. Nov. 20, 2024) (granting an unopposed motion to intervene where the requested discovery would be used against the intervenors in the foreign proceeding); *In re Hornbeam*

*Corp.*, No. 14-MC-0424 (VSB), 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015) (concluding that the proposed intervenor is a "party against whom the requested information will be used and has standing to challenge the issuance of 1782 subpoenas under the Rules of Civil Procedure and under the statute itself").

For the foregoing reasons, I respectfully recommend that the de Sarthe Parties Motion and the Peretti Motion should be GRANTED and that the de Sarthe Parties and Peretti should be permitted to intervene in this matter.

**B. The Application**

1. Legal Principles

Under 28 U.S.C. § 1782(a), a federal district court may order any person who "resides or is found" in the district "to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." Under the statute, the party making the application must show that: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *In re Guo*, 965 F.3d 96, 102 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).

When the statutory requirements are met, a court is "free to grant discovery in its discretion." *In re Optimal Inv. Servs., S.A.,* 773 F.3d 456, 460 (2d Cir. 2014). Although that discretion is broad, it "must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and

encouraging foreign countries by example to provide similar means of assistance to our courts." *Mangouras v. Boggs*, 980 F.3d 88, 97 (2d Cir. 2020). Additionally, Section 1782 authorizes discovery only "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a).

The Supreme Court has identified four discretionary factors (the "*Intel* Factors") that a court considers when ruling on a Section 1782 application:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome.

*Mangouras,* 980 F. 3d at 97-98 (citing *Mees*, 793 F.3d at 298 and *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

The fourth *Intel* Factor – whether the request is "unduly intrusive or burdensome" – is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *See In re XPO Logistics, Inc.*, No. 15-MC-0205 (LGS), 2017 WL 6343689, at *4 (S.D.N.Y. Dec. 11, 2017) (citing *Mees*, 793 F.3d at 302). As applied to Section 1782 applications, Rule 26 "contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, No. 22-MC-0132 (RA) (KHP) ("*Correios*"), 2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022), *report and recommendation adopted as modified as to other grounds*, No. 23-MC-0132 (RA), 2024 WL 4299019 (S.D.N.Y. Sept. 25,

2024). The "proportionality analysis depends upon the relevance of the information sought – and, in the case of a § 1782 petition, relevance is assessed with regard to the foreign proceeding." *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017).

2. <u>The Statutory Requirements</u>

Petitioner argues that he has met the Section 1782 statutory requirements, in that the Respondent Entities reside or are found within the District, that the discovery sought is for use in the Foreign Proceedings, and that he is an interested party. (*See* ECF 4, Pet.'s Mem. at 5-8.) Peretti and the de Sarthe Parties respond primarily that Petitioner has failed to meet the second statutory factor by failing to show that the discovery sought is "for use" in the Foreign Proceedings. (*See* ECF 20, de Sarthe Mem. at 7-9; ECF 37, Peretti Mem. at 4-10.) For the reasons set forth below, I conclude that Petitioner has met the statutory factors only with regard to the subpoenas to Sotheby's and Christie's, but only to the extent that the subpoenas are limited as described below.

a. Found in this District

The Second Circuit has held that "§ 1782's resides or is found language extends to the limits of personal jurisdiction consistent with due process." *In re Del Valle Ruiz,* 939 F.3d 520, 528 (2d Cir. 2019). Thus, an application under Section 1782 seeks discovery from a respondent that "resides in or is found" in this District if the respondent would be subject to the Court's general or specific personal jurisdiction. Corporate entities such as the Respondent Entities are subject to this Court's general personal jurisdiction if they either are incorporated in New York State or have their principal place of business in the District. *See Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 134-35 (2d Cir. 2014) (holding that the district court could not exercise general

personal jurisdiction over a nonparty bank that had branch offices in the forum but was incorporated and headquartered elsewhere and where the bank was not in the "exceptional" situation that its contacts with the forum were so "continuous and systematic" that it was "essentially at home" there (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 138-39 & n.19 (2014))).

Petitioner argues that each of the Respondent Entities either is incorporated in New York State, or has its principal place of business in this District, or both. (*See* ECF 4, Pet.'s Mem. at 6-8.) Peretti and the de Sarthe Parties do not appear to contest the point, stating that the Court must satisfy itself whether Petitioner has made the requisite showing that the Respondent Entities would be subject to this Court's general personal jurisdiction. (*See* ECF 20, de Sarthe Mem. at 7 n.1.; ECF 37, Peretti Mem at 5.) Having reviewed Petitioner's submission on this issue (*See* ECF 3, Vandenabeele Decl. ¶¶ 8-25; ECF 4, Pet.'s Mem. at 6-8), I conclude that he has adequately supported his claim that each of the Respondent Entities would be subject to this Court's general personal jurisdiction and therefore that each Respondent Entity resides or is found in this District for the purposes of a Section 1782 application.

Petitioner goes on to argue that the discovery it seeks – records of banking, including transfers, deposits, and account openings, conducted and or routed through New York City – resulted from the Financial Institution Respondent Entities' contacts with the forum, meaning that this Court may exercise specific personal jurisdiction over them. (*See* ECF 4, Pet.'s Mem. at 8-11.)

Petitioner is correct that, at least with regard to the Financial Institution Respondent Entities, the first statutory requirement is satisfied for the additional reason that those entities

are subject to this Court's specific personal jurisdiction and therefore reside or are found within the District. *See In Re Marinakis,* No. 24-MC-0485 (JGK) (HJR), 2025 WL 696769, at *4 (S.D.N.Y., Feb. 21, 2025) (finding that the Court had specific jurisdiction over this respondent financial institution where "the evidence sought consist[ed] of records of U.S.-denominated wire transfers routed through New York City and documents related thereto" that are located in this District).

b. Discovery for Use in a Foreign Proceeding

*i. Legal Principles*

In analyzing whether discovery being sought under Section 1782 is for use in a foreign proceeding, courts look to whether a foreign proceeding is pending or "within reasonable contemplation," *Intel,* 542 U.S. 241, 247, as well as "whether [the] foreign proceeding is adjudicative in nature." *Euromepa, S.A. v. R. Esmerian, Inc*., 154 F.3d 24, 27 (2d Cir. 1998). If the pending foreign proceeding is adjudicative, courts analyze whether the requested discovery is "relevant to the subject matter of the [foreign] proceeding, and the evidence would increase the applicant's chances of success in the proceeding." *In re Asia Mar. Pac., Ltd*., 253 F. Supp. 3d 701, 706 (S.D.N.Y. 2015) (quoting *Mees*, 793 F.3d at 299).

Rule 26(b) of the Federal Rules of Civil Procedure requires that information sought through discovery be relevant to a claim or defense. Thus, an applicant's discovery requests should be "tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Athene Holding Ltd. v. Dang*, No. 23-MC-0171 (JHR) (SLC), 2023 WL 5348950, at *3 (S.D.N.Y. Aug. 21, 2023). Additionally, however, as explained by the Second Circuit, because Congress "adopt[ed] the phrase 'for use,'" it "plainly meant to

require that § 1782 applicants show that the evidence sought is something that will be employed with some advantage or serve some use in the proceeding." *Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015). As a result, courts addressing requests for discovery under Section 1782 must determine whether the applicant "will actually be able to use the information in the proceeding." *Id*. An applicant needs to make only a de minimis showing that the requested discovery is "for use" in a foreign proceeding. *In re BonSens.org,* 95 F.4th 75, 80 (2d Cir. 2024) (explaining that applicants must "demonstrate that the evidence is minimally relevant to the foreign proceeding"); *see also In re Application of Shervin Pishevar*, 439 F. Supp. 3d 290, 302-03 (S.D.N.Y. 2020).

Here, the Foreign Proceedings are pending, and the Hong Kong court will adjudicate Petitioner's claims, including for breach of contract, dishonest assistance, and conversion. (*See* ECF 4, Pet.'s Mem. at 2.) The question thus is whether Petitioner has satisfied the statutory for use requirement – that is, whether Petitioner has shown that the discovery sought meets the relevance standard under Rule 26. *See In re SBK ART LLC,* No. 24-MC-0147 (PAE) (RFT), 2024 WL 4264893, at *17 (S.D.N.Y. July 30, 2024) ("In [the Section 1782] context, Rule 26 contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case."), *report and recommendation adopted*, 2025 WL 1537474 (S.D.N.Y. May 30, 2025).

*ii. Relevance of the Discovery Sought*

"A Section 1782 application fails to satisfy [the for use] requirement where the discovery sought is not relevant to the foreign proceeding." *In re Sumitomo Pharma UK Holdings, Ltd*., No. 24-MC-0290 (VSB) (HJR), 2025 WL 18274, at *2 (S.D.N.Y. Jan. 2, 2025) (citing

*Certain Funds*, 798 F.3d at 116). Petitioner argues that the bank records and auction house records are relevant, in that they would reveal (i) the current location of the Artworks, (ii) whether any Artworks were sold and if so were reinvested as required by the Agreement, and (iii) whether Petitioner received half of any sale proceeds, also as required by the Agreement. (*See* ECF 24, Pet.'s de Sarthe Reply at 3.)

Peretti and the de Sarthe Parties reply that the discovery sought will shed no light on whether Petitioner owned the Artworks or entered into the Agreement. (*See* ECF 20, de Sarthe Mem. at 7-9; ECF 37, Peretti Mem. at 8-9.) Peretti and the de Sarthe Parties contend that Petitioner would be able to use the requested discovery only if he established his ownership of the Artworks and the existence and terms of the Agreement, and that if he fails to show that he owns the Artworks, "he will have no ability to use discovery from intermediary U.S. banks or auction houses regarding purchases and sales of artworks that are not his and in which he has no interest, financial or otherwise." (ECF 37, Peretti Mem. at 10; *see also* ECF 20, de Sarthe Mem. at 8.) Peretti and the de Sarthe Parties therefore conclude that the discovery sought is not for use in the Foreign Proceedings, because Petitioner cannot establish that he has "the practical ability to inject the requested information into a foreign proceeding." (ECF 37, Peretti Mem. at 10 (quoting *In re Accent Delight Int'l Ltd*., 869 F.3d 121, 132 (2d Cir. 2017); *see also* ECF 20, de Sarthe Mem. at 8.) Peretti and the de Sarthe Parties insist that Petitioner's ability to use the discovery in the Foreign Proceedings is speculative and that the Application is at best premature, particularly because of the "dearth of a record supporting [Petitioner's] ownership." (ECF 20, Peretti Mem. at 8-9; *see also* ECF 37, de Sarthe Mem. at 6-7, 10.)

This line of reasoning misconstrues the analysis in *Accent Delight International.* There, the Second Circuit explained that an individual or entity has the practical ability to submit evidence in a foreign proceeding if the individual or entity has "participation rights" in the proceeding – meaning a way to introduce the discovery as evidence. *See* 869 F.3d at 131. This inquiry is distinct from the question whether the discovery sought is relevant to (and therefore for use in) the Foreign Proceedings. Petitioner has such participation rights as a claimant in the Foreign Proceedings.

To the extent that the discovery sought would be relevant to Petitioner's claims in the Foreign Proceedings, the Application is not premature, even if Petitioner cannot be sure that the evidence sought will be considered by the Hong Kong court, because Petitioner might fail to prove ownership of the Artworks. The Second Circuit Court of Appeals has explained that an application satisfies the "for use" requirement if "there are circumstances under which" the foreign court "could hear" the evidence, "regardless of how narrow those circumstances might be." *Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 82-83 (2d Cir. 2012). Peretti and the de Sarthe Parties have not established that there currently is a procedural bar to Petitioner's eventual use of the discovery sought through the Application, which means that Petitioner has the ability to use the requested discovery in the Foreign Proceedings*. See Watkins v. Ellesse LLC*, No. 24-MC-0023 (JGK), 2024 WL 4582755, at *5 (S.D.N.Y. Oct. 25, 2024) (distinguishing the case from *BonSens,* 95 F.4th at 80, because Watkins' position on the

threshold questions has not been rejected by multiple foreign courts, whereas the petitioner's case in *BonSens* was on appeal on jurisdictional grounds).[7]

I therefore return to the question whether Petitioner has satisfied his minimal burden of demonstrating relevance. The second and third categories of information – whether any Artworks were sold and if so were reinvested as required by the Agreement, and whether Petitioner received half of any sale proceeds – if contained in the discovery sought, would be relevant to Plaintiff's claim for breach of the Agreement and for conversion. If the Artworks were sold through Sotheby's or Christie's, discovery from the auction houses would enable Petitioner to show that the Artworks had been sold, which would be a first step towards demonstrating whether the de Sarthe Parties breached the Agreement by neglecting to reinvest or to send half the proceeds to Petitioner. (*See* ECF 2, Greig Decl. ¶ 28.) And if sales of the Artworks involved payments in U.S.-dollars that passed through the Financial Institution Respondent Entities, the requested bank records, in conjunction with auction house records reflecting the prices paid for the Artworks, could identify the recipients of the funds, among

[7] As to the de Sarthe Parties' and Peretti's requests for a stay pending resolution in the Foreign Proceedings of the question of the ownership of the Artworks, I am unaware of any precedent granting such relief. *See* I*n re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, No. 23-MC-0208 (JGLC) (GS), 2024 WL 555780, at *19 (S.D.N.Y. Jan. 18, 2024) (denying the respondent's motion to stay "pending resolution of discovery issues raised" by the foreign tribunal, because Section 1782 does not have a discoverability requirement and respondent "cites to no authority suggesting a stay would be appropriate here"), *report and recommendation adopted*, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024). Indeed, even in cases where a foreign action was "likely to be dismissed in the near future," courts have declined to "engage in speculation about how any of the Foreign Proceedings may be resolved" and thus denied requests to stay discovery or "hold" their decisions. *In re SBK Art LLC*, No. CV 24-MC-0147 (PAE) (RFT), 2024 WL 4264893, at *7 (S.D.N.Y. July 30, 2024), *report and recommendation adopted*, 2025 WL 1537474 (S.D.N.Y. May 30, 2025).

other information, which could demonstrate whether proceeds from the sale of any of the Artworks were diverted to third parties in violation of the Agreement. (*See id.* ¶ 24.)

Peretti argues that Petitioner has not shown that the discovery sought would be relevant because he has not supported his claim that the Respondent Entities were involved with purchases or sales of the Artworks. (*See* ECF 37, Peretti Mem. at 7-8.) The de Sarthe Parties further suggest that over the 10-year period for which Petitioner seeks records, the Discovery Targets would have entered many transactions unrelated to the Artworks with Christie's and Sotheby's and with the Financial Institution Respondent Entities acting as correspondent or intermediary banks, contending that much of the discovery sought would be irrelevant to the Foreign Proceedings, without any likelihood that any relevant discovery would be produced. (*See* ECF 20, de Sarthe Mem. at 7.)

Petitioner counters the Christie's and Sotheby's are "the major New York-based auction houses through which [he] has previously sold artworks. These entities are not randomly selected; they are central conduits for the transactions at issue and are therefore likely to possess relevant, non-speculative evidence." (ECF 41, Pet.'s Peretti Reply at 3.) As to the bank records sought, Petitioner asserts that the Financial Institution Respondent Entities "are commonly known to act as correspondent, intermediary, or otherwise clearinghouse banks for U.S. Dollar-denominated wire transfers passing from domestic banks to international banks." (ECF 4, Pet.'s Mem. at 3.) Petitioner concludes that relevant "transactions would occur through a bank's branch in the United States" and that "almost any payment in U.S. Dollars . . . clears through the New York financial system." (ECF 3, Vandenabeele Decl. ¶ 26; ECF 41, Pet.'s Peretti Reply at 8 (quoting *In re Ulmans*, No. 23-MC-0023 (GHW) (VF), 2023 WL 3853703, at *5

(S.D.N.Y. Apr. 20, 2023), *report and recommendation adopted*, 2023 WL 3412769 (S.D.N.Y. May 12, 2023)).[8]

I agree with Peretti and the de Sarthe Parties that Petitioner has cast too wide a net for relevant discovery. That Petitioner in the past bought and sold art through Christie's and Sotheby's provides thin evidence that Peretti or the de Sarthe Parties did so: there are other auction houses in other locations as well as, I believe, a possibility of private sales. Even if any of the Artworks were sold through Christie's or Sotheby's, Petitioner has not explained his basis for concluding that the sales would have involved dollars, or, if they did involve dollars, that the proceeds would have been transferred to international banks. And without some indication that any of the Artworks were sold through Christie's and Sotheby's in New York, there would be no basis to pinpoint the dates or amounts of any sales, so that it is unclear how Petitioner could match up sales of the Artworks with unrelated U.S.-dollar transactions of the Discovery Targets.

Subpoenas to Christie's and Sotheby's seeking records from February 1, 2015 to October 3, 2025 of any purchases or sales of the Artworks by the Discovery Targets would either yield

---

[8] Petitioner also argues that the requests addressed to the Financial Institution Respondent Entities are narrowly tailored, because the requests seek only records of transactions in the banks' role as correspondent or intermediary banks, which are records kept in easily searched electronic form that are routinely produced without significant cost. (*See* ECF 41, Pet.'s Peretti Reply at 3.) However, this argument about burden would be considered only if Petitioner has satisfied the statutory prerequisites, including by demonstrating the relevance of the discovery sought to the Foreign Proceedings. *See Mees*, 793 F. 3d at 297-98 (explaining that, "[o]nce [Section 1782's] statutory requirements are met, a district court may grant discovery . . . in its discretion" upon weighing the four *Intel* factors). I therefore address the arguments about burden in Part III.B.3.d, below.

no records or records of relevant transactions.[9] Accordingly, I respectfully recommend that the Application should be GRANTED IN PART, permitting issuance of subpoenas to Sotheby's and Christie's for records of any purchases or sales of the Artworks by the Discovery Targets during that period. If the requested discovery provides Petitioner with evidence that the Discovery Targets in fact sold any of the Artworks through Sotheby's or Christie's, Petitioner should be permitted to return to this Court to seek additional targeted discovery from the auction houses – such as, for example, records of purchases by the same sellers shortly after the sales of the Artworks – and possibly the Financial Institution Respondent Entities, or some of them, if the evidence suggests that the sales involved wires between U.S. and international banks.

c. An Application Brought by an Interested Party

The Application is brought by Petitioner, which is the claimant in the Foreign Proceedings. (*See* ECF 4, Pet.'s Mem. at 1, 10-11.) Peretti and the de Sarthe Parties do not appear to dispute this point. (*See generally* ECF 20, de Sarthe Mem. at 7-9. *See also* ECF 37, Peretti Mem. at 5.) Thus, Petitioner has established that he is an interested party for the purposes of Section 1782. *See In re Esses,* 101 F.3d 873, 875 (2d. Cir. 1996) (holding that parties to foreign proceedings are necessarily interested persons under the plain language of Section 1782).

***

9 I recommend a cutoff date of October 3, 2025, which is the date that the Hong Kong Defendants agreed to preserve the Artworks and Reinvested Artworks pending trial or further order of the Court. (*See* ECF 2, Greig Decl. ¶¶ 17-18.)

For the reasons set forth above, I conclude that Petitioner has met the statutory requirements of Section 1782 with respect to subpoenas to Sotheby's and Christie's for records relating to purchases or sales of the Artworks by the Discovery Targets between February 1, 2015 and October 3, 2025. I therefore turn to the discretionary factors set forth in *Intel*. I address the *Intel* Factors as relevant to all the requested discovery from all Respondent Entities, in the event that Your Honor disagrees with my recommendation that Petitioner has met the statutory factors only with regard to limited discovery of the auction houses.

3. The *Intel* Discretionary Factors

Petitioner argues that each of the four *Intel* Factors weighs in favor of granting the discovery requested. (*See* ECF 4, Pet.'s Mem. at 11-13.) Peretti and the de Sarthe Parties counter that *Intel* Factors cut against permitting the discovery sought. (*See* ECF 20, De Sarthe Mem. at 9-14; ECF 37, Peretti Mem. at 10-15.) For the reasons set forth below, I conclude that the *Intel* Factors favor granting discovery.

a. The First *Intel* Factor: Whether the Entity from Which Discovery Is Sought Is a Participant in the Foreign Proceeding

The first *Intel* Factor examines whether "the person [or entity] from whom discovery is sought is a participant in the foreign proceeding, in which case the need for Section 1782(a) aid generally is not as apparent." *Mangouras*, 980 F.3d at 97. Petitioner argues that there is no expectation that any of the Respondent Entities will be a participant in the contemplated Foreign Proceedings. (*See* ECF 4, Pet.'s Mem. at 12.) The de Sarthe Parties and Peretti respond that they are the "real parties in interest," because the discovery sought involves records of

banking activity and purchases and sales of art by Peretti, the de Sarthe Parties, and affiliated individuals and entities. (ECF 20, de Sarthe Mem. at 9-11; ECF 37, Peretti Mem. at 11-12.)

The Second Circuit previously rejected this argument in an analogous matter, holding that even though the records sought by the petitioner related to the intervenors, the intervenors were not "the real part[ies] from whom documents are sought." *In re Kipperband*, No. 24-2627, 2025 WL 1418706, at *2 (2d Cir. May 16, 2025). In another similar matter, this Court held that the first *Intel* factor weighed against discovery when the discovery sought was in the respondent's possession as part of the respondent's "safekeeping or advisory function" for the intervenor but not when the respondent independently created and maintained the documents in question. *In re Youngpoong Corp.*, No. 25-MC-0194 (JAV), 2025 WL 3228034, at *3 (S.D.N.Y. Nov. 19, 2025).

Here, Petitioner seeks records kept by the Financial Institution Respondent Entities irrespective of any relationship those banks may have had with Peretti and the de Sarthe Parties; and Petitioner seeks records kept by Christie's and Sotheby's for their own purposes, without regard to any relationship those auction houses may have had with Peretti and the de Sarthe Parties. I conclude that the Financial Institutions Respondent Entities, Christie's, and Sotheby's – not Peretti and the de Sarthe Parties – are the real parties from whom discovery is sought. The Respondent Entities are not participants in the Foreign Proceedings, and so the first *Intel* Factor supports granting the requested discovery.

b. The Second *Intel* Factor:
Receptivity of the Foreign Forum to Judicial Assistance

The second *Intel* Factor concerns "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Mangouras*, 980 F.3d at 97-98. "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance[,]" and a court "should deny discovery on the basis of lack of receptiveness only where it is provided with authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176-77 (S.D.N.Y. 2020) (quoting *Euromepa v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995)); *see also In re Safra*, No 21-MC-0640 (GHW) (JLC), 2022 WL 3584541, at *5 (S.D.N.Y. Aug. 22, 2022) (noting that "objection to U.S. federal-court judicial assistance would have to come from an official source, such as an agent of the [foreign] government"); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 84 (2d Cir. 2004) (denying the discovery request where the German Ministry of Justice and local German prosecutor asked the district court to do so).

Petitioner argues that this factor cuts in his favor because Hong Kong courts are receptive to judicial assistance from the United States. (*See* ECF 4, Pet.'s Mem. at 13.) Peretti and the de Sarthe Parties argue that this factor weighs in their favor because the Hong Kong court is already supervising the Foreign Proceedings, and Petitioner can seek its requested discovery through those proceedings. (*See* ECF 20, de Sarthe Mem. at 11; ECF 37, Peretti Mem. at 12-13.) However, as explained further below, the Second Circuit has consistently rejected

such quasi-exhaustion requirements as a pre-requisite for granting 1782 applications. *See infra* Part III.B.3.c. As the de Sarthe Parties and Peretti have provided no statement from an official Hong Kong source indicating that the Hong Kong court would not be receptive judicial assistance from the United States, this factor supports granting the Application.

c. The Third *Intel* Factor: Circumvention of Foreign Proof-Gathering Restrictions

The third *Intel* Factor asks "whether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," *Mangouras*, 980 F.3d at 98, which occurs if the application is an attempt to evade discovery procedures in the foreign jurisdiction, or if the application is otherwise a "bad faith endeavor to misuse Section 1782." *In re Bouka*, 637 F. Supp. 3d 74, 90 (S.D.N.Y. 2022); *see also In re Hansainvest Hanseatische Inv.-GmbH,* 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) (holding that the third *Intel* Factor weighed in the applicant's favor because "the Court is not persuaded that Applicants have engaged in any improper or bad faith evasion of German procedures").

Petitioner argues that there is no evidence that Hong Kong law includes "proof-gathering restrictions" that would "prohibit the acquisition" of the records sought. (ECF 41, Pet.'s Peretti Reply at 10 (citing *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd*., 27 F.4th 136, 153 (2d Cir. 2022)).) The de Sarthe Parties respond that Petitioner is trying to "circumvent the Hong Kong court's management of the disclosure process," particularly since Petitioner did not seek discovery of bank or auction house records in the Foreign Proceedings. (ECF 20, de Sarthe Mem. at 11-12.) Peretti adds that "Hong Kong courts typically do not allow asset tracing or financial discovery until after a case has been won and the losing party is unable to pay the judgment." (ECF 37, Peretti Mem. at 13.) Petitioner's Hong Kong counsel has submitted a

declaration supporting the position that Hong Kong courts routinely grant non-party discovery, including inspection of bank records, at any stage of the proceedings. (*See* ECF 2, Greig Decl. ¶ 31; ECF 43, Second Reply Greig Decl. ¶¶ 9-12.)

With respect to the third *Intel* factor, "[p]roof-gathering restrictions are best understood as rules . . . that prohibit the acquisition or use of certain materials, rather than as rules that fail to facilitate" it. *Mees*, 793 F.3d at 303 n.20; *see also Euromepa*, 51 F.3d at 1100 ("[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."); *In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 18-MC-50 (JMF), 2018 WL 2849724, at *4 (S.D.N.Y. Jan 11, 2018) (holding that the third *Intel* Factor supported the application because there was no proof that the foreign court would reject the evidence).

Whether or not the Hong Kong court would itself order the requested discovery at this stage in the case, neither Peretti nor the de Sarthe Parties has submitted any evidence that the Hong Kong court would reject the evidence sought through the Application. And the de Sarthe Parties' implicit suggestion that Petitioner is circumventing Hong Kong's evidence-gathering restrictions by failing to first seek the discovery in question through the Hong Kong court has been rejected repeatedly by Courts in this Circuit, because Section 1782 does not impose "a quasi-exhaustion requirement." *Mees* 793 F.3d at 303. A petitioner need not "tr[y] and fail[ ] to obtain the discovery" in the foreign proceedings before filing a Section 1782 application. *Id*. The Second Circuit has made it clear that "[i]f there are two equally valid means to the same end

and neither is meant to restrict use of the other, the choice of one over the other is not "circumvention." *Fed. Republic of Nigeria*, 27 F.4th at 153.

d. The Fourth *Intel* Factor: Whether the Discovery Request Is Unduly Intrusive or Burdensome

The fourth *Intel* Factor looks at "whether the request is unduly intrusive or burdensome," *Mangouras*, 980 F.3d at 98, which is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *See XPO Logistics, Inc*., 2017 WL 6343689, at *4 (citing *Mees,* 793 F.3d at 302). In this context, Rule 26 "contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Correios*, 2022 WL 4955312, at *8. The "proportionality analysis depends upon the relevance of the information sought"; in the case of a Section 1782 petition, "relevance is assessed with regard to the foreign proceeding." *Catalyst Managerial Servs.,* 680 F. App'x at 39; *see also Mees*, 793 F.3d at 302; *In re Palladian Partners, LP*, No. 25-MC-0330 (JLR), 2025 WL 2814719, at *11 (S.D.N.Y. Oct. 3, 2025).[10]

As discussed in my analysis of the for use statutory requirement, I conclude that Petitioner has demonstrated that records from Christie's and Sotheby's of sales of the Artworks

[10] While the Courts in this District have held that "[i]ntervenors cannot be heard to complain that the subpoenas are burdensome because they are not burdensome to [i]ntervenors," Courts in this District have explained that this prohibition does not prevent "the subject of Section 1782 discovery," that is, the intervenor, from "object[ing] to the discovery requests as overbroad where the requests call for information that goes far beyond anything that would be relevant to the foreign proceeding and are intrusive in scope." *In re Navios South American Logistics Inc.*, No. 24-MC-575 (LJL), 2025 WL 369717, at *9 (S.D.N.Y. Feb. 3, 2025) (citing cases).

by the Discovery Targets between February 1, 2015 and October 3, 2025 are relevant to the Foreign Proceedings. *See supra* Part III.B.2.b. If Your Honor grants the Application in part and permits discovery of Sotheby's and Christie's (either limited as recommended in this report and recommendation or in full), and if either auction house finds in the course of responding to the subpoena that the burdens are undue, based on a high number of documents responsive to a particular request that need to be reviewed or any other reason, that auction house should be permitted to seek relief from the Court, if necessary, after meeting and conferring with Petitioner.

If Your Honor disagrees that Petitioner has failed to show that the discovery sought from the Financial Institution Respondent Entities is relevant, there is no basis at this time to conclude that the discovery requests are unduly burdensome. Petitioner asserts that the requests addressed to the Financial Institution Respondent Entities are narrowly tailored and seek records kept in easily searched electronic form that are routinely produced without significant cost. (*See* ECF 4, Pet.'s Mem. at 3.) Peretti and the de Sarthe Parties do not dispute this point. (*See generally* ECF 20, de Sarthe Mem. at 12-14; ECF 37, Peretti Mem. at 13-14.)

Accordingly, the fourth *Intel* Factor favors allowing discovery.

***

As set forth above, each of the *Intel* Factors cuts in favor of granting discovery.

4. Peretti and the de Sarthe Parties' Request for a Protective Order

If Your Honor grants the Application (whether in limited form as recommended here or in full), I respectfully recommend that no production be permitted until after Petitioner on the

one hand and the de Sarthe Parties and Peretti on the other negotiate an appropriate protective order limiting the use of the requested discovery to the Foreign Proceedings.[11]

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that the unopposed motions to intervene (ECF 19, 36) be GRANTED and that the Application seeking discovery (ECF 1) be GRANTED IN PART, in that subpoenas should be issued to Sotheby's and Christie's for any records between February 1, 2015 and October 3, 2025 of sales of the Artworks by the Discovery Targets. Because some or all the defects in the Application may be curable, I

[11] The de Sarthe Parties argue that parties to cases in the Hong Kong courts "have an implied obligation of confidentiality to use documents obtained in discovery only for the purposes of that litigation." (ECF 20, de Sarthe Mem. at 15; ECF 21, Chung Decl. ¶ 32.) The de Sarthe Parties therefore request entry of a protective order restricting Petitioner's use of any discovery to the Foreign Proceedings. (*See* ECF 20, de Sarthe Mem. at 15.) Petitioner responds that there is no "expectation of privacy concerning the information kept in bank records." (ECF 24, Pet.'s de Sarthe Reply at 12-13 (quoting *United States v. Miller*, 425 U.S 435, 442 (1976)).) However, I am aware of at least one instance where this Court has, at an intervenor's request, required bank records to be produced to a protective order limiting the use of the discovery to the relevant foreign proceedings). *See In Re Obtain Discovery from Five Banks for Use in Int'l Proceedings Pursuant to 28 U.S.C. § 1782*, No. 25-MC-0414 (AS), 2025 WL 3523215, at *2 (S.D.N.Y. Dec. 9, 2025). I conclude that a protective order would be appropriate in this matter as well. Petitioner asks that if the Court is inclined to issue a protective order that the Court permit use of the discovery in the Foreign Proceedings and "also in other jurisdictions where third-party wrongdoers might subsequently be identified in connection with the same subject matter." (ECF 24, Pet.'s de Sarthe Reply at 13.) However, until any such proceedings are identified, I see no basis to permit the discovery to be used therein. If such proceedings are filed, Petitioner may approach the Court to modify the protective order.

respectfully recommend that Petitioner be permitted to file a renewed application if he can cure the defects identified in this report and recommendation.

DATED: May 6, 2026
New York, New York

Respectfully Submitted,

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

Petitioner shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections or responses to objections must be addressed to Judge Broderick.

**THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).